GENERAL COURT, OCTOBER TERM, 1799.

GASSAWAY *vs.* DORSEY.

REPLEVIN for two negro slaves, *James* and *Harry*. The whole record of the proceedings, including the *special verdict* and *bill of exceptions*, are set forth in 2 *Harris's Entries*, 245 to 253. The case appears to be, that the defendant being indebted unto *James Russell*, a *British subject*, on the 6th of December 1763, executed a deed of mortgage of his *real* and *personal property*, *negroes*, &c. *and their future increase*, to secure the payment of the said debt on the 6th of December 1766; which said mortgage deed was acknowledged on the 17th of January 1764, before *one* of the *justices* of the then *provincial court*, and was recorded on the same day amongst the records of the *provincial court*. That the property remained in the possession of the defendant, the .mortgagor, who sold negro *Rachel*, mentioned in the said mortgage, and her son *James*, (one of the negroes for which this action was brought,) born after the execution of the said mortgage to one *Thomas Gassaway*, on the 18th of February seventeen hundred and eighty-two, at public sale. That part of the purchase money is still due from him. That the said *Gassaway*, in virtue of the purchase, held and possessed the said negroes until the year 1791, when he gave negro *James* to his son, the plaintiff in this action. That negro *Harry*, the other slave, and son of the said *Rachel*, was born in the possession of the said *Thomas Gassaway*, who also gave him to the plaintiff in 1791, who held and possessed them until they were taken out of his possession by the defendant. That *James Russell*, the mortgagee aforesaid, always, until his death in 1789, resided in parts beyond the seas, and never was a citizen of Maryland, or of the United States, or any of them. That in 1789 administration on his estate was granted to *James Clerke*, of Prince George's county, in this state. That the said *Clerke*, as administrator of the said *Russell*, on the 11th of December, 1795, executed a *bill of sale*, (the original of which was produced at the trial,) to *Edward Dorsey of Caleb*, *(a)* for sundry of the said negroes mentioned in the said mortgage, and amongst others, negroes *James* and *Harry* mentioned in the writ of replevin in this cause. That the property of the said *Russell* was confiscated. That the defendant made payments into the treasury, in virtue of the, act *for calling out of circulation the quota*, &c. in discharge of the money due on account of the said mortgage to *Russell*.

*(a)* *Edward Dorsey* was originally a defendant with the present defendant, but having died before the trial, his death was suggested.

Ocr. 1799.

Gassaway
vs.
Dorsey.

The preceding was found in a *special verdict* at May term 1798. At the same term, during the trial, the defendant by his counsel, for the purpose of proving property in himself in the negro slaves for which this action was brought, produced an office copy of the mortgage herein before mentioned, of the 6th of December 1763, containing *real* and *personal* property, which was recorded only in the land records of the late *provincial,* now general court.

*Mason* and *Shaaff,* for the plaintiff, objected to the office copy of the mortgage being given in evidence to the jury, and contended that the defendant must either produce the original deed, and prove its execution, or prove it lost or destroyed before he could give a copy in evidence, inasmuch as the mortgage including personal property, had not been recorded agreeably to the provisions of the act of 1729, *ch.* 8, *s.* 5, in the records of the *county* court, within *twenty days* from the date thereof.

*Martin,* (Attorney General,) and *Ridgely,* for the defendant, contend d that the deed of mortgage was to be considered as enrolled for safe keeping; and they cited for that purpose 3 *Lev.* 387. 2 *Salk.* 280. *Theory of Evid.* 13. That where a deed is not recorded in time, and that appears on the trial, yet the court will permit the party to produce such deed to the jury as evidence that a feoffment was made; so where a deed is good and operative for one purpose, it is good for all other purposes; and as the recording of the deed in the records of the provincial court made it an effectual deed for the transfer of the real estate, and an office copy would be sufficient evidence of such transfer, so it is good evidence of the transfer of the personal estate mentioned in such deed; but where a deed has not been acknowledged, a copy cannot be evidence. That at common law, real and personal property might pass by parol—2 *Pow.* 62, 63; and the act of 1729, *ch.* 8, only relates to creditors. That the acknowledgment of the party estops him from denying his own deed—2 *Bac. Ab.* 308.

Goldsborough, Ch. J. *(a)* The court are of opinion, that the office copy of the deed of mortgage may be given in evidence to the jury; because the said deed, including real and personal property, appears to have been acknowledged before a justice of the provincial court, who was competent to take the acknowledgment of a deed trans-

*(a) Chase* and *Duvall,* J. concurring.

ferring both real and personal property; and the clerk of that court had authority to record the deed, real property being included therein; a copy therefore of such deed is evidence of the same having been acknowledged, and the acknowledgment is evidence of its execution; and it being proved to be executed, it operates to transfer the personal property.

The plaintiff excepted.

The cause was continued on the *special verdict* until this term, (October 1799,) when the GENERAL COURT gave judgment on the *special verdict* for the defendant.

The plaintiff appealed to the Court of Appeals, and at June term 1803, the cause was argued in that court.

*Shaaff*, for the appellant. It may be questioned whether the tender has been well found by the *special verdict*, *Dorsey* not being stated a citizen, nor what is the amount of the debt due from him to *Russell*. From the statement of this case it appears, that during the operation of the tender law, and before the treaty, *Dorsey* paid the mortgage money, which by operation of law vested the property in him; that during that time he sold the negroes to *T. Gassaway*, who conveyed them to the appellant. It is giving to the treaty of peace a retrospective operation to determine that it made the payments so bad as to defeat all *mesne* conveyances; but this, it is said, has been decided. This cause depends on two questions. *First*—Whether the mortgage deed has been legally recorded to carry the property? *Secondly*—Whether, even if the property was legally mortgaged to *Russell*, the appellant is entitled to recover from the present appellee?

As to the *first point*—By the act of 1729, *ch.* 8, *s.* 5, 6, no goods, &c. shall pass to a vendor, mortgagor or donor, where possession is not delivered, unless the mortgage, &c. is recorded in the county court—proviso not to avoid sales, &c. against the party, &c. This law does not take in our case, because we claim under the mortgagor, *John Dorsey*. By the act of 1763, *ch.* 13, no gift of a negro, &c. shall be good unless recorded in the county court, &c. The objection here is, that this deed does not come under that law, being a mortgage and *no gift*. If the word *gift* shall alone extend to gratuitous conveyances it will not take in this case. For the definition of the term "*gift*", see *Wood's Inst.* 315, 318, and statute *de donis*, 13 *Edw. I. ch.* 1.

But the *second point* seems in favour of the appellant. By the act of confiscation the legal property in these negroes was vested in the state of Maryland; and although a mortgage in equity is considered a debt, yet

law, after the forfeiture, considers the mortgagee as the legal owner. This property then was confiscated to the state, and in the state it was liable to *Russell's* money, and *Dorsey's* equity of redemption. The conveyance from *Russell's* administrator could give *Dorsey* no legal property, of course he could bring no suit to recover the property. It is stated that the mortgagor continued in possession with the consent of the mortgagee, and deriving title under the mortgagor was in possession when *Dorsey* took the property, having no right.

The question resolves itself into this simple proposition, can a mortgagor, or his assignee in possession, maintain replevin against him who has no right? A general or special property is sufficient to maintain replevin —4 *Bac. Ab.* The finder of a jewel has such a property as will maintain trover—1 *Stra.* 505. 2 *Esp.* 332. The reason here given is such that will also support replevin, *i. e.* that the finder has a special property.

*Johnson,* on the same side. Suppose debt is brought upon a covenant in a deed, would the office copy be evidence upon a plea of *non est factum?* Where performance is pleaded it admits the deed. A *copy* of the acknowledgment does not estop the party from denying it is his deed. The object of the act of assembly was, that all conveyances of personal property, where the grantor, &c. remained in possession, should be recorded in the records of the county court. But this deed was acknowledged before a justice of the provincial court, and recorded in the records of that court, and not in the records of the county court. It is not the original deed which was produced at the trial, but an attested copy, it is said, and which the general court permitted to be read in evidence. It was not necessary to record the deed in the records of the provincial court; it was only necessary to record it in the records of the county court; and it being recorded in the former and not in the latter, is precisely the same as if it had not been recorded at all, so far as relates to the property in question. The act of 1729, *ch.* 8, *s.* 5, relates only to creditors; but the act of 1763, *ch.* 13, takes in this deed, and makes it necessary that it should be recorded in the records of the county court, so as to permit a copy to be evidence. The recording of a deed in a wrong place gives it no validity. The bill of exceptions states that there is one of the witnesses to the deed who is alive, and yet a copy was permitted to be given in evidence, when the original, if the party had it, and it was not stated that he had it not, or could not procure it, might have been proved.

*Ridgely*, for the appellee. Prior to our acts of assembly, no deed for personal property was necessary to be recorded. The act of 1729 excepts cases between the contracting parties, and the act of 1763 only extends to gifts, not to contracts. The deed between *Russell* and *Dorsey* is binding without being recorded—*Theory of Evidence*, 13. 2 *Bac. Ab.* 318. 3 *Lev.* 387. *Salk.* 280. The decisions of our courts have destroyed the payments into the treasury under the act of 1780.

*Key*, on the same side. The acts of 1729 and 1763 have no operation upon the deed from *Dorsey* to *Russell*. *Dorsey's* payments into the treasury, under the act of 1780, were void; and the act of confiscation destroyed *Russell's* title to the property in the mortgage; *Dorsey* therefore, in 1782, could give no title to *Gassaway*; and this being an action of replevin, and property pleaded, the appellant was bound to shew title. The mortgage deed being a conveyance at common law, a copy of the record of it is sufficient evidence. A witness is only wanted to prove it to have been executed. Does not an office copy prove it? Covenant may be maintained upon a mortgage without the mortgage having been recorded; but if it is recorded, a copy may be given in evidence. The appellant cannot make title to the property but under the state, as the property was confiscated; and he has not such a title as is necessary in replevin.

*Martin*, (Attorney General,) on the same side, contended, that the appellant must show a special title under some person having the right of property. That the acknowledgment and recording of the deed of mortgage forever estops them from pleading *non est factum*.

THE COURT OF APPEALS, [*Rumsey*, Ch. J. *Mackall*, *Jones*, *Potts* and *Dennis*, J.] at June term 1803, *reversed* the judgment of the General Court, (dissenting from the opinion expressed by that court in the *bill of exceptions*,) and awarded a *procedendo*.

# GENERAL COURT, OCTOBER TERM, 1799.

## JOHN M'CREERY's Lessee *vs.* ALLENDER.

EJECTMENT for lot No. 14, in the city of Baltimore, of that part of the said city called Fell's Point.

The following *statement of facts* was agreed upon and submitted to the court for their opinion thereon, viz. That